24CA0666 Peo in Interest of EMK 10-31-2024

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA0666
Larimer County District Court No. 22JV30046
Honorable C. Michelle Brinegar, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of E.M.K., a Child,

and Concerning A.M.A.,

Appellant.

_____

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

_____

William G. Ressue, County Attorney, Nicole Liley, Assistant County Attorney, Fort Collins, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for E.M.K.

Just Law Group LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    A.M.A. (mother) appeals the judgment terminating her parent-child legal relationship with E.M.K. (the child).  We affirm.

## I.    Background

¶ 2    The Larimer County Department of Human Services (the Department) filed a petition in dependency and neglect after receiving a report that mother was withholding food, water, and other basic necessities from the fourteen-year-old child.  The child had been sleeping on the ground outside the family's tent with no blankets or sleeping bag.  The Department was granted temporary custody of the child, and she was placed in foster care.  The court adjudicated her dependent or neglected by summary judgment and adopted a treatment plan for mother.

¶ 3    Mother's treatment plan required her to (1) maintain contact with the Department; (2) complete a psychological evaluation and follow any recommendations; (3) participate in individual therapy to understand the child's trauma and demonstrate trauma-informed parenting practices; (4) find and maintain a safe home environment for herself and the child and provide for the child's medical, dental, and mental health needs; (5) participate in family time with the

child; and (6) comply with the law and all requirements stemming from a criminal case that had been filed against her.

¶ 4     More than a year after the treatment plan was adopted, the Department moved to terminate mother's parental rights, and mother was appointed a guardian ad litem. After a hearing, the juvenile court granted the Department's motion.

## II.    Reasonable Efforts

¶ 5     Mother contends that the juvenile court erred by concluding that the Department made reasonable efforts because it did not reasonably accommodate her disabilities. We disagree.

### A.    Applicable Law and Standard of Review

¶ 6     Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the state must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and care" for a child who is in out-of-home placement. § 19-1-103(114). This standard is satisfied by the provision of services in accordance with section 19-3-208, C.R.S. 2024. § 19-1-103(114); *see also People in Interest of C.T.S.*, 140 P.3d 332, 335 (Colo. App. 2006).

2

¶ 7    The services must be "appropriate to support the parent's treatment plan." *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  But the parent is responsible for using those services to obtain the assistance needed to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 8    When a parent has a qualifying disability under the Americans with Disabilities Act (ADA), the Department has an affirmative duty to "account for and, if possible, make reasonable accommodations for the parent's disability when devising a treatment plan and providing rehabilitative services." *People in Interest of S.K.*, 2019 COA 36, ¶ 34; *see also* § 19-3-208(2)(g) (requiring services to comply with the ADA).  And in assessing the reasonableness of the Department's efforts, the juvenile court must consider whether reasonable accommodations were made.  *S.K.*, ¶ 34.  But for a parent to benefit from a reasonable accommodation, the parent must raise the applicability of the ADA as early in the proceedings as possible.  *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 16.

¶ 9    Whether the Department satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile

court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the Department satisfied its reasonable efforts obligation. *Id.*

### B. Reasonable Accommodation

¶ 10 Mother contends that the Department did not reasonably accommodate her disabilities of Multiple Chemical Sensitivity (MCS) and Chronic Fatigue Syndrome (CFS). She does not identify any specific accommodation that the Department should have provided. Instead, she asserts generally that the Department failed to adequately account for her disabilities in developing and implementing her treatment plan. We are not persuaded.

¶ 11 Mother asserts that she informed a caseworker about her disabilities early in the case. But while the caseworker testified that mother told her she had "medical conditions" and "mental health [conditions]," the caseworker was not aware of any specific diagnoses or requests for accommodations. *See S.K.*, ¶ 22 ("The Department can accommodate, and the juvenile court can address, only disabilities that are known to them."). About a week after mother's first court appearance, mother's counsel told the court

that mother suffered from MCS but made no specific request for accommodation, saying only, "I don't know what to really do."

¶ 12    Three weeks later, mother's counsel filed a motion for accommodations under the ADA, explaining that she had been diagnosed with MCS and CFS. But the only accommodation mother requested was that she be allowed to participate virtually in future court proceedings. The district court granted mother's request and allowed her to appear virtually to accommodate her disabilities. And although the caseworker testified that she was not aware of the ADA request, she too was prepared to arrange virtual services.

¶ 13    For example, the caseworker testified that she could have arranged for urinalysis testing at mother's home. She also testified that, if mother had communicated with her, she could have arranged for a virtual psychological evaluation and individual therapy. And she testified more generally that the Department could have accommodated mother's requests for virtual services if she had engaged in the case. But mother's lack of communication and unwillingness to tell the caseworker where she lived prevented the Department from moving forward with such arrangements.

¶ 14    Mother points to other discussions of her significant physical needs and medical diagnoses at subsequent hearings. But she never requested any additional accommodation. *See id.* at ¶ 21 ("[T]he parent should also identify any modifications that he or she believes are necessary to accommodate the disability."). At the termination hearing, the caseworker testified that mother never communicated about "ways to work around" her medical issues.

¶ 15    Mother asserts on appeal that she also had mental health-related disabilities. But although the caseworker testified that she was aware mother had mental health "conditions," mother does not point to anywhere in the record (and we have found none) where she argued that her mental health conditions constituted a disability under the ADA or requested any accommodation for such disability. *See S.Z.S.*, ¶¶ 20-21 (holding that mother did not preserve ADA argument where she did not indicate that her condition constituted an ADA-cognizable disability).

¶ 16    The record also shows that, although the Department was willing to arrange for virtual services and accommodate mother not wanting to leave her home, mother did not engage in any aspect of her treatment plan. *J.C.R.*, 259 P.3d at 1285. Among other things,

mother did not give the Department a working phone number and, through her guardian ad litem, told the caseworker she was "not allowed to go and try to see her." Without any ability to contact mother, the caseworker was unable to help her set up the necessary services. Mother also never provided releases of information to the caseworker so that she could speak with mother's probation officer or pretrial services concerning the status of her criminal case. Ultimately, the caseworker testified that none of the child protection concerns giving rise to this case had been resolved by the time of the termination hearing and that mother remained an unfit parent.

¶ 17 In granting the Department's motion, the juvenile court acknowledged mother's request for ADA accommodations and noted that, in light of that request, it had allowed mother to appear virtually. It further explained that although the Department "absolutely should accommodate any ADA need," it did not have "any information about what is needed or what is requested." The court also found that the Department had "tried to contact mother so they could accommodate her," but mother was "not cooperative."

¶ 18    The record supports the juvenile court's findings, and we agree

with its conclusion that the Department made reasonable efforts to

support mother's rehabilitation under the facts of this case.

### III.    Disposition

¶ 19    The judgment is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.